IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JO ANN BOOKER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:26-cv-3720-G-BN |
| | § | |
| CITY OF DALLAS, TEXAS, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jo Ann Booker, "a retired Dallas police officer whose finally adjudicated workers' compensation benefits for posttraumatic stress disorder … were extinguished," Booker argues, "without notice or an opportunity to be heard by [a] default judgment" that Defendant City of Dallas, Texas obtained in a Texas state court, filed this *pro se* lawsuit against the City asserting claims under 42 U.S.C. § 1983 based on allegations that the City deprived her of due process under the Fourteenth Amendment. Dkt. No. 3.

Senior United States District Judge A. Joe Fish referred Booker's lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

After reviewing the complaint, the undersigned is satisfied that Booker has properly alleged subject matter jurisdiction but finds that she has not alleged liability against the sole defendant, a municipality.

Which means this lawsuit is subject to dismissal.

But, considering her *pro se* status, the Court enters this memorandum opinion

and order to notify Booker of the pleading deficiencies and allow her an opportunity to amend her allegations.

"As always, jurisdiction first." *Calogero v. Shows, Cali & Walsh, L.L.P.*, 95 F.4th 951, 958 (5th Cir. 2024) (citation omitted).

Under their limited jurisdiction, federal courts generally may only hear a case if it involves a question of federal law or where diversity of citizenship exists between the parties. *See* 28 U.S.C. §§ 1331, 1332.

Booker invokes Section 1331 based on the alleged constitutional violations. *See* Dkt. No. 3, ¶ 2.

And Booker argues that "[t]his action is not barred by the *Rooker-Feldman* doctrine" because (1) her appeal of the state court judgment remains pending and (2) she "complains of the Defendant's own unconstitutional conduct and seeks damages, not appellate review or vacatur of a judgment." *Id.*, ¶ 4.

"Reduced to its essence, the *Rooker-Feldman* doctrine holds that inferior federal courts do not have the power to modify or reverse state court judgments except when authorized by Congress." *English v. Crochet*, 154 F.4th 369, 372 (5th Cir. 2025) (cleaned up).

But this "doctrine is a narrow one, 'confined to ... cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* at 373 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

Considering Booker's arguments concerning the doctrine, the undersigned agrees with the second but not the first.

As to the first, the United States Supreme Court recently clarified "that *Rooker-Feldman* applies even when the state court judgment at issue remains subject to further review in state appellate proceedings." *Myles v. Cumberland Cnty. Child Support Enforcement Agency*, Civ. A. No. 25-01125-BAJ-EWD, 2026 WL 2859899, at *3 (M.D. La. Sept. 23, 2026) (citing *T.M. v. Univ. of Md. Sys. Corp.*, 608 U.S. 668 (2026)); *see T.M.*, 608 U.S. at 680 ("In T. M.'s view, endorsed by the dissent, the Court should adopt a new rule specifying that *Rooker-Feldman* bars only federal suits seeking review and rejection of '[f]inal judgments' that are 'rendered by the highest court of a State in which a decision could be had,' 28 U.S.C. § 1257(a). Because that rule is inconsistent with the Court's precedents, risks producing anomalous results, and undermines federalism interests, the Court declines to adopt it." (citations omitted)); *id.* at 702 & n.1 (Barrett, J., dissenting) (identifying *Miller v. Dunn*, 35 F.4th 1007 (5th Cir. 2022), as one of seven Courts of Appeals decisions "refusing to apply *Rooker-Feldman* when the underlying state action remained pending").

But, at least as framed in the complaint, Booker's allegations do not seem to run afoul of this narrow jurisdictional doctrine where she contends that the damages she seeks here emanate not from the state court judgment itself but from how the City obtained that judgment. *See* Dkt. No. 1, ¶ 12-15; *Avdeef v. Royal Bank of Scotland, P.L.C.*, 616 F. App'x 665, 673 (5th Cir. 2015) (per curiam) ("Critically, Avdeef's complaint seeks relief other than review and reversal of the adverse state-

court judgment: he requests damages for alleged constitutional violations and torts committed by the parties to the state-court action. This relief does not directly attack the validity of an existing state court judgment. Relatedly, the source of Avdeef's injuries, according to his complaint, is not the state judgment but the allegedly unlawful conduct of his adversaries. The mere fact that Avdeef's claims appear to be 'inextricably intertwined' with the state-court judgment is not enough to invoke *Rooker-Feldman*'s jurisdictional bar." (cleaned up)); *cf. Perez v. ME Alpha I, LLC*, Civ. A. No. H-25-3178, 2026 WL 1471901, at *3 n.5 (S.D. Tex. May 26, 2026) ("In this case, the plaintiffs – in their own framing – request damages based on Fields' allegedly unconstitutional enforcement actions. Those claims are not barred by *Rooker-Feldman*, even though the dispute stems from questions about the validity of the state court judgment that he was enforcing. The court concludes that it can reach the (meritless) merits.").

And, so, Booker has alleged a claim that is independent of the state court judgment.

As the United States Court of Appeals for the Fifth Circuit recently explained in *English*,

> [t]he Supreme Court has cautioned that, in light of the "narrow ground" that *Rooker-Feldman* occupies, it does not prohibit a plaintiff from "present[ing] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." *Exxon Mobil Corp.*, 544 U.S. at 284, 293 (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)). That principle makes sense, particularly given the Supreme Court's admonition that *Rooker-Feldman* does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id.* at 293.

> The key inquiry, then, is the source of the injury alleged in the federal complaint. If the injury stems from the state court decision itself, then *Rooker-Feldman* bars federal jurisdiction. But if the injury arises from the defendant's actions, the plaintiff asserts an independent claim not subject to *Rooker-Feldman*. *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382-83 (5th Cir. 2013).

*English*, 154 F.4th at 373 (citation modified).

But, even if there is subject matter jurisdiction, Booker still has not alleged liability against the only defendant (the City) since "[a] person may sue a municipality that violates his or her constitutional rights [only] 'under color of any statute, ordinance, regulation, custom, or usage.'" *Hutcheson v. Dall. Cnty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021) (quoting 42 U.S.C. § 1983; citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

To plausibly plead liability as to the City, Booker "has two burdens: to [allege] (1) that a constitutional violation occurred and (2) that a municipal policy was the moving force behind the violation." *Sanchez v. Young Cnty., Tex.*, 956 F.3d 785, 791 (5th Cir. 2020) (citing *Monell*, 436 U.S. at 694).

To plausibly allege that a policy was the moving force,

> a plaintiff must identify "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (cleaned up). Municipalities are not liable "on the theory of respondeat superior" and are "almost never liable for an isolated unconstitutional act on the part of an employee." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

*Hutcheson*, 994 F.3d at 482.

These elements are "necessary to distinguish individual violations perpetrated

by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001).

And, where a plaintiff's claim fails as to one prong, a court "need not consider whether [the plaintiff's] claim also fails the other two *Monell* prongs." *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 & n.11 (5th Cir. 2021) (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168-69 (5th Cir. 2010)).

"Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (citations omitted).

And, in rare circumstances, "a single decision by a policymaker may … constitute a policy for which a municipality may be liable," where (1) the "decision was made by a final policymaker, and (2) a plainly obvious consequence of the decision is a constitutional violation." *Doe v. Englewood Indep. Sch. Dist.*, 964 F.3d 351, 366 (5th Cir. 2020) (cleaned up); *see also Johnson v. Harris Cnty.*, 83 F.4th 941, 946 (5th Cir. 2023) ("[A]n official policy includes the decisions of a government's law-makers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." (cleaned up)).

"Under the second requirement, a plaintiff must show '[a]ctual or constructive knowledge of [a] custom' that is 'attributable to the governing body of the municipality or to an official to whom that body ha[s] delegated policy-making

authority.'" *Allen v. Hays*, 65 F.4th 736, 749 (5th Cir. 2023) (citation omitted).

A plaintiff must then "allege 'moving force' causation by showing first, 'that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'" *Id.* (citation omitted).

As to the causation required, "[t]his connection must be more than a mere 'but for' coupling between cause and effect." *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992) (footnote omitted). That is because the "moving force" is the "catalyst" for the injury in question, not merely a "contributing factor." *Johnson v. Cook Cnty.*, 526 F. App'x 692, 695-96 (7th Cir. 2013) (per curiam).

"[T]he failure to provide proper training [or supervision] may fairly be said to represent a policy for which the [municipality] is responsible, and for which [it] may be held liable if it actually causes injury." *Shumpert v. City of Tupelo*, 905 F.3d 310, 317 (5th Cir. 2019) (citation omitted). And, although "a separate theory of municipal liability," "the same standard applies both to a failure to train [or to supervise] claim and to a municipal liability claim." *Pinedo v. City of Dall., Tex.*, No. 3:14-cv-958-D, 2015 WL 5021393, at *9 (N.D. Tex. Aug. 25, 2015) (citations omitted).

"The ratification theory provides another way of holding a city liable under § 1983" but only "if the policymaker approves a subordinate's decision and the basis for it, as this 'ratification' renders the subordinate's decision a final decision by the policymaker." *Allen*, 65 F.4th at 749 (footnote omitted).

And, most importantly, regardless of the theory of municipal liability, "[t]o

proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (citation and footnote omitted).

That is because "[t]he causal link 'moving force' requirement and the degree of culpability 'deliberate indifference' requirement must not be diluted, for 'where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.'" *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018) (en banc) (citations omitted).

Examining the complaint, all Booker has offered are conclusions – that is, there are no specific facts from which the Court may reasonably infer that what allegedly happened here occurred because of a policy or custom. *See* Dkt. No. 1, ¶ 18.

Absent such factual allegations, the Court may only conclude that Booker has failed to plausibly allege liability against the named defendant since allegations "limited to the events surrounding the plaintiff" cannot even constitute "an allegation of a *de facto* policy … by [a municipality]," *Culbertson v. Lykos*, 790 F.3d 608, 629 (5th Cir. 2015); *accord Hutcheson*, 994 F.3d at 482, as such allegations do "not plausibly allege *any* pattern of conduct – much less a pattern of similar violations," *Johnson*, 83 F.4th at 947 (emphasis in original).

That said, the Court should generally allow *pro se* plaintiffs an opportunity to cure deficient allegations before dismissing their complaints under Federal Rule of Civil Procedure 12(b)(6).

And, so, the Court GRANTS Booker leave to file an amended complaint by **November 30, 2026** to address the deficiencies set out above.

And, if Booker fails to cure the pleading deficiencies identified above, the undersigned will recommend that the Court dismiss this lawsuit on its own motion under Rule 12(b)(6).

SO ORDERED.

DATED: October 28, 2026

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE